ACCEPTED
15-25-00147-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/10/2025 2:10 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00147-CV

# IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/10/2025 2:10:28 PM
CHRISTOPHER A. PRINE
Clerk

**CHARLES WAGNER,**
- **APPELLANT**

**V.**

**LAMAR UNIVERISTY AND LAMAR UNIVERSITY POLICE DEPARTMENT,**
– **APPELLEES**

---

**ON APPEAL FROM THE 136th JUDICIAL DISTRICT COURT**
**JEFFERSON COUNTY, TEXAS**
**CAUSE NO. 23DCCV0870**
**HON. JUDGE BAYLOR WORTHAM, PRESIDING**

---

**BRIEF OF APPELLANT CHARLES WAGNER**

---

**SUBMITTED BY:**

Brandon P. Monk
4875 Parker Drive
Beaumont, Texas 77705
Phone: (409) 724-6665
Fax: (409) 729-6665
brandon@themonklawfirm.com

Larry Watts
P.O. Box 2214
Missouri City, Texas 77459
Ph. (281) 431-1500,
Fax (877) 797-4055
Wattstrial@gmail.com

i

# I. IDENTITY OF PARTIES AND COUNSEL

The following list contains all known parties and their attorneys of record:

| APPELLEES: | COUNSEL FOR APPELLEES: |
|---|---|
| LAMAR UNIVERSITY | Joseph Keeney<br>State Bar No. 24092616<br>Assistant Attorney General Office of the Attorney General<br>General Litigation Division<br>P.O. Box 12548,<br>Capitol Station Austin, Texas 78711-2548<br>T: (512) 475-4090<br>F: (512) 320-0667<br>Joseph.Keeney@oag.texas.gov<br>**KEN PAXTON**<br>Attorney General<br>**BRENT WEBSTER**<br>First Assistant Attorney General<br>**JAMES LLOYD**<br>Deputy Attorney General for Civil Litigation<br>**KIMBERLY GDULA**<br>Division Chief, General Litigation Division |
| LAMAR UNIVERSITY POLICE DEPARTMENT | Same as above |
| HECTOR FLORES | Same as above |

| APPELLANT: | COUNSEL FOR APPELLANT: |
|---|---|
| CHARLES WAGNER | Brandon P. Monk<br>State Bar No. 24048668<br>4875 Parker Drive<br>Beaumont, Texas 77705<br>Phone: (409) 724-6665<br>Fax: (409) 729-6665 |

| | brandon@themonklawfirm.com |
| | |
| | Larry Watts |
| | State Bar No. 20981000 |
| | P.O. Box 2214 |
| | Missouri City, Texas 77459 |
| | Ph. (281) 431-1500, |
| | Fax (877) 797-4055 |
| | Wattstrial@gmail.com |

## II.    <u>TABLE OF CONTENTS</u>

*I.   IDENTITY OF PARTIES AND COUNSEL*......................................................*ii*

*II.  TABLE OF CONTENTS*..................................................................*iv*

*III. INDEX OF AUTHORITIES*..............................................................*vii*

*IV. STATEMENT REGARDING ORAL ARGUMENT*.....................................*xi*

*V.   RECORD REFERENCES*.................................................................*xi*

*VI. PARTY REFERENCES*...................................................................*xi*

*VII.  STATEMENT OF THE CASE*.........................................................*1*

   **Nature of the Case**........................................................................*1*

   **Course of Proceedings**...................................................................*1*

   **Trial Court's Disposition**................................................................*2*

*VIII.  ISSUES PRESENTED*................................................................*3*

*IX. STATEMENT OF THE FACTS*........................................................*4*

*X.   SUMMARY OF ARGUMENT*..........................................................*7*

*XI. STANDARD OF REVIEW*...............................................................*10*

*XII.  ARGUMENT*..........................................................................*11*

**A. Issue One: The Trial Court Erred in Dismissing Appellant's Due Course of Law Claim Under Article I, Section 19 of the Texas Constitution** ..........11

1. Constitutional Framework and Standard of Review ................................11

2. Appellant Adequately Pleaded Facts that Established a Protected Property Interest in His Employment .............................................................13

3. The Trial Court Improperly Weighed Evidence Rather Than Accepting Pleaded Facts ................................................................................................16

4. Appellant Was Denied Procedural Due Process ......................................19

5. The Proper Remedy for a Due Process Violation is Due Process ..........23

6. The Texas Constitution Provides an Independent Cause of Action for Equitable Relief ............................................................................................26

**B. Issue Two: The Trial Court Erred in Dismissing Appellant's Liberty Interest "Stigma-Plus" Claim** ........................................................................30

1. The Texas Constitution Protects Liberty Interests in Reputation When Coupled With Government Employment Action ............................................30

2. Appellant Properly Pled a "Stigma-Plus" Liberty Interest Claim ...........33

3. False and Stigmatizing Statements ........................................................37

4. Public Disclosure ...................................................................................41

5. Connection to Termination .....................................................................44

6. No Meaningful Opportunity to Clear His Name .....................................47

7.  The Trial Court Erred in Dismissing This Claim ....................................54

8.  Three Independent Reasons the Trial Court's Dismissal Was Erroneous 56

9.  Texas Supreme Court Precedent Compels Reversal ...............................58

10. The Trial Court Failed to Apply the Proper Pleading Standard ..............59

**C. Issue Three: The Trial Court Erred in Dismissing Appellant's First Amendment Retaliation Claim Under 42 U.S.C. § 1983 ...............................59**

1.  The First Amendment Retaliation Claim is Timely Under the Relation Back Doctrine .......................................................................................60

2.  Wagner Properly Pleaded All Elements of First Amendment Retaliation 62

3.  Sovereign Immunity Does Not Bar Individual Capacity Claims Under Section 1983 ..........................................................................................65

*XIII.   CONCLUSION & PRAYER .............................................................67*

*XIV.   ATTORNEYS FOR APPELLANT .................................................70*

*XV.    CERTIFICATE OF SERVICE ........................................................71*

*XVI.   CERTIFICATE OF COMPLIANCE .............................................71*

## III.  INDEX OF AUTHORITIES

**Cases**

Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) ............ 13, 46, 47

Bishop v. Wood, 426 U.S. 341, 348 (1976) .................................................................41

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006) .....................64

Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir. 1989) ..........................................60

Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1042-43 (11th Cir. 1989) ........33

Charles v. Grief, 522 F.3d 508, 514 (5th Cir. 2008) .................................................64

Chavez v. Andersen, 525 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ........................................................................................................................62

City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex. 1995) ..........................26

City of Dallas v. Sanchez, 494 S.W.3d 722, 724 (Tex. 2016) .......................... 10, 38

City of Elsa v. M.A.L., 226 S.W.3d 390, 391 (Tex. 2007) .......................................28

City of Odessa v. Barton, 967 S.W.2d 834, 835 (Tex. 1998) ....................... 7, 14, 68

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) ...........................48

Codd v. Velger, 429 U.S. 624, 628 (1977) ................................................................43

Connick v. Myers, 461 U.S. 138, 145-46 (1983) ......................................................64

Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) .......................................................63

Goss v. Lopez, 419 U.S. 565, 575 ............................................................................40

Hafer v. Melo, 502 U.S. 21, 25-26 (1991) ...............................................................65

Ho v. University of Texas at Arlington ,984S.W.2d672(Tex.App.-- Amarillo 1998,pet.denied) ...................................................................................60

In re Farmers Tex. County Mut. Ins. Co., 621 S.W.3d 261, 266 (Tex. 2021) . 17, 56

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)..................................................66

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)..................................................66

Leonard v. Texasco, Inc., 422 S.W.2d 160 (Tex. 1967)...........................................60

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) .....................................................19

McLane Co. v. Strayhorn, 148 S.W.3d 644, 649 (Tex. App.--Austin 2004, pet. denied) ...................................................................................................................10

Mosley v. Tex. Health & Human Servs. Comm'n, 593 S.W.3d 250, 255-56 (Tex. 2019) ............................................................................................................. 37, 42

Mosley v. Tex. Health & Human Servs. Comm'n, 593 S.W.3d 250, 262 (Tex. 2019) ..........................................................................................................................11

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) .........................................................62

Nieves v. Bartlett, 139 S. Ct. at 1725 ......................................................................65

Paul v. Davis, 424 U.S. 693 (1976) .........................................................................32

Paul v. Davis, 424 U.S. 693, 701-02 (1976).............................................................44

Paul v. Davis, 424 U.S. 693, 711 (1976) ..................................................................41

Perry v. Sindermann, 408 U.S. 593, 601 (1972).......................................................13

San Jacinto River Auth. v. Medina, 627 S.W.3d 618, 628 (Tex. 2021)...10, 12, 15, 56

San Jacinto River Auth. v. Medina, 627 S.W.3d 618, 628 (Tex. 2021)..................16

Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004)...10

Turner v. Perry, 278 S.W.3d 806, 812 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ...............................................................................67

Turner v. Texas Dept. of Mental Health, 920 S.W.2d 415, 419 (Tex. App.—Austin 1996, writ denied)..................................................................28

Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 929 (Tex. 1995).......11

Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 930 (Tex. 1995)8, 36, 42, 47

Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 930 (Tex. 1995).......30

Univ. of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 933 (Tex. 1995),..68

University of Texas System v. Courtney, 946 S.W.2d 464, 468-69 (Tex. App.—Fort Worth 1997, writ denied) ...............................................................28

Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989).....................66

Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 693 (5th Cir. 2007) ...............63

Wilson v. Garcia, 471 U.S. 261, 275-76 (1985) .....................................................60

Wisconsin v. Constantineau, 400 U.S. 433 (1971)........................................... 32, 39

**Statutes**

42 U.S.C. § 1983 ....................................................................................................68

TEX. CIV. PRAC. & REM. CODE § 16.068(a) ........................................................60

Texas Civil Practice and Remedies Code § 16.068 ...............................................69

**Rules**

TEX. R. CIV. P. 91a ...............................................................................................10

TEX. R. CIV. P. 91a.6 ........................................................................ 15, 16, 17, 59

**Constitutional Provisions**

TEX. CONST. art. I, § 19 .......................................................................................11

## IV.   STATEMENT REGARDING ORAL ARGUMENT

Charles Wagner does not request oral argument.

## V.   RECORD REFERENCES

This brief will reference the Clerk's Record, the Reporter's Record, and the Appendix Tabs. References to these records will be short cited as follows:

Clerk's Record:              CR[page(s)]

Reporter's Record:           RR[volume], [page(s)]

Appendix Tab:                App. Tab [number]

## VI.   PARTY REFERENCES

A. Plaintiff/Appellant is Charles Wagner or Wagner.

B. Defendant/Appellee Hector Flores is Flores or Chief Flores.

C. Defendant/Appellee Lamar University is Lamar.

D. Defendant/Appellee Lamar University Police Department is LUPD.

## VII.  STATEMENT OF THE CASE

This appeal arises from the trial court's dismissal of Appellant Charles Wagner's claims against Appellee Hector Flores for alleged violations of the Texas Constitution's due course of law provision and First Amendment retaliation under 42 U.S.C. § 1983.

**Nature of the Case**

Appellant's claims stem from his termination from employment as a Campus Safety Officer at Lamar University Police Department after approximately twenty-one months of service. (CR7). Appellant alleges that his termination constituted retaliation for providing a statement in support of a colleague's Equal Employment Opportunity Commission complaint against Appellee Flores, the Chief of Police. (CR67, CR174). Appellant contends this termination violated his due process rights under Article I, Section 19 of the Texas Constitution and constituted unlawful retaliation for engaging in protected speech under the First Amendment. (CR67, CR174-175).

**Course of Proceedings**

Appellant filed his original petition on August 8, 2023. (CR7). After filing a First Amended Petition on January 4, 2024 (CR64), Appellant filed his Second Amended Petition on May 2, 2024. (CR155). On May 16, 2024, the trial court granted Lamar University's Plea to the Jurisdiction, dismissing all claims against

1

Lamar University and Lamar University Police Department. (CR169). Appellant then filed his Third Amended Petition on May 30, 2024, adding Appellee Flores as a defendant. (CR171, CR192). Appellee Flores filed a Plea to the Jurisdiction and Rule 91a Motion to Dismiss on June 17, 2024. (CR192). Appellant filed his Response on November 6, 2024 (CR210), and Appellee filed his Reply on November 12, 2024. (CR216).

**Trial Court's Disposition**

On November 14, 2024, the 136th Judicial District Court of Jefferson County granted Appellee's Plea to the Jurisdiction and Rule 91a Motion to Dismiss, dismissing Appellant's claims with prejudice. (CR223). Appellant timely filed a Motion for New Trial on December 12, 2024 (CR225), which was overruled by operation of law. Appellant then filed his Notice of Appeal on January 14, 2025. (CR230).

# VIII. <u>ISSUES PRESENTED</u>

1. Whether the trial court erred in dismissing Appellant's due course of law claim under Article I, Section 19 of the Texas Constitution on the grounds that Appellant lacked a protected property interest in his employment when Appellant alleged a legitimate expectation of continued employment based on LUPD policies and practices.

2. Whether the trial court erred in dismissing Appellant's liberty interest or "stigma-plus" claim when Appellant alleged that false and stigmatizing statements were made public about him in connection with his termination without any meaningful opportunity to clear his name.

3. Whether the trial court erred in dismissing Appellant's First Amendment retaliation claim under 42 U.S.C. § 1983 against Appellee Flores in his individual capacity on statute of limitations grounds when the claims related back to the original petition under Texas Civil Practice and Remedies Code § 16.068.

## IX.  STATEMENT OF THE FACTS

Appellant Charles Wagner was employed by Lamar University Police Department as a Campus Safety Officer from November 15, 2017 until August 14, 2019. (CR171, CR179). Throughout his employment, Wagner distinguished himself by his hard work, competency, and commitment to his job. (CR171). As a Campus Safety Officer, Wagner's responsibilities included responding to calls for service, handling medical calls, managing lost items belonging to the university, locking buildings, and patrolling the campus. (CR179).

During his employment, Wagner met Kandy Pompa, a dispatcher at the Lamar University Police Department. (CR179). Before August 13, 2019, Pompa asked Wagner to provide a statement related to what he knew about the alleged basis for her resignation and to give detailed support regarding the discrimination he had witnessed. (CR179). Pompa was preparing to file a charge of discrimination with the Equal Employment Opportunity Commission against Chief Hector Flores. (CR174).

On August 13, 2019, at approximately 11:30 PM, Wagner and Pompa went to Gentry Hall on the Lamar University campus to meet with Melissa Hebert, another Campus Safety Officer, to finalize their statements in support of Pompa's EEOC complaint. (CR53, CR 175, CR179). Wagner was off duty at this time.

4

(CR179). It was known to Chief Flores that Wagner was working on a statement to help Pompa. (CR53, CR179). The group remained at Gentry Hall for approximately three hours. (CR179). During this time, only two residents came through the security desk, and Hebert attended to them without distraction. (CR180).

At approximately 2:00 AM on August 14, 2019, Sergeant Yatara Martin entered Gentry Hall and observed Hebert, Wagner, and Pompa. (CR179-180). Sergeant Martin asked Hebert if she needed a break, to which Hebert declined. (CR180). Pompa acknowledged Sergeant Martin, who then left the building. (CR180). At no time did Sergeant Martin speak to Wagner or tell him that he was not supposed to be there. (CR180). Wagner and Pompa left Lamar University at approximately 2:20 AM. (CR180).

Later that day, at approximately noon on August 14, 2019, Wagner received a phone call from Sergeant Monica Ryan stating he needed to come to the police department with his equipment and uniforms for inventory. (CR180). Instead of conducting an inventory, Wagner was brought into a conference room where Sergeant Monica Ryan, Lieutenant Brent Sonnier, Chief Hector Flores, and Brenda Dixon were present. (CR180). Chief Flores began to speak and made false accusations against Wagner, which Wagner recorded for his own protection. (CR180-181). Wagner was asked repeatedly about Kandy Pompa, what he was

5

doing with her, and what she was doing at the campus. (CR181). Wagner explained that he was there to give a statement for Pompa and that Hebert was doing the same thing. (CR181). Chief Flores and the others already knew this information but continued to question Wagner about it during his termination. (CR181).

Wagner was terminated on August 14, 2019. (CR171, CR179). Wagner alleges he received no warning prior to his termination, and the timeliness and reasonableness of his termination were suspect. (CR174). He contends there was no inquiry to determine fault, no fair investigation, and no consistent rules regarding the stated reason for his termination. (CR174). Further, there was no consideration given to Wagner's employment record. (CR174).

On August 16, 2019, Wagner was told that a rumor circulating around campus claimed he had been terminated because he came to work drunk. (CR181). This rumor was false. (CR181). Wagner alleges he was terminated in retaliation for helping Pompa stand up against false accusations and for giving statements in support of Pompa's discrimination claims. (CR54, CR174-175, CR180-181).

Before his termination meeting, Wagner was denied access to the LUPD.org portal and was unable to access video from the night of the alleged policy violation. (CR181). Wagner requested that this video be preserved in a grievance

6

filed on August 21, 2019. (CR181). Wagner submitted a grievance which was never acted on by Defendants. (CR186).

## X.     SUMMARY OF ARGUMENT

Appellant presents three primary grounds for reversal of the trial court's dismissal order. First, the trial court erroneously concluded that Appellant lacked a protected property interest sufficient to support his due course of law claim under Article I, § 19 of the Texas Constitution. The record demonstrates that Lamar University Police Department's policies and procedures created a legitimate expectation of continued employment absent just cause for termination. As the Texas Supreme Court recognized in *City of Odessa v. Barton*, 967 S.W.2d 834, 835 (Tex. 1998), at-will employment may be modified for public employees through personnel manuals and established procedures. Appellant's petition specifically alleged that the "LUPD employer's handbook or policy indicat[ed] that termination may only occur for 'just cause,'" creating a constitutionally protected property interest. (CR174). Further, Appellant was denied fundamental procedural protections, including notice, a fair investigation, and consideration of his employment record prior to his termination.

Second, the trial court improperly dismissed Appellant's liberty interest or "stigma-plus" claim under the Texas Constitution's due course of law provision.

The Texas Supreme Court has recognized that procedural due process protections apply "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Appellant adequately pleaded that false and stigmatizing statements—specifically, a rumor that he was terminated for coming to work intoxicated—were made public on campus in connection with his termination. (CR54, CR174, CR180). These allegations, supported by sworn affidavit testimony, establish a viable "stigma-plus" claim because Appellant was denied any meaningful opportunity to clear his name before these damaging statements threatened his ability to secure future employment.

Third, the trial court erred in dismissing Appellant's First Amendment retaliation claim under 42 U.S.C. § 1983 on statute of limitations grounds. Appellant's Third Amended Petition, which added Appellee Flores and asserted the Section 1983 claim, relates back to Appellant's original petition filed on August 8, 2023, pursuant to Texas Civil Practice and Remedies Code § 16.068. (CR7, CR171). The original petition gave notice of the retaliatory termination that forms the basis of the Section 1983 claim, and the claims arise from the same transaction or occurrence. Moreover, Appellant properly alleged that he engaged in protected speech by providing a statement supporting a colleague's EEOC complaint, and that Appellee Flores retaliated against him by terminating his employment the day

8

after witnessing him assist with that complaint. (CR174-175, CR179-180). Sovereign immunity does not bar this claim because it was properly brought against Appellee Flores in his individual capacity for constitutional violations.

When reviewed under the appropriate de novo standard, and with all well-pleaded allegations accepted as true, Appellant's petition states viable constitutional and federal civil rights claims for which relief is available.

## XI. STANDARD OF REVIEW

Whether a court has subject matter jurisdiction and whether a plaintiff has affirmatively established subject matter jurisdiction are questions of law that [this court] review[s] de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.--Austin 2004, pet. denied).

Rule 91a provides that a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. TEX. R. CIV. P. 91a.1. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. *Id.* In ruling on a Rule 91a motion, a court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action…." *Id.* 91a.6. [This Court] reviews the merits of a Rule 91a motion de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam)." *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021).

## XII.  ARGUMENT

**A. Issue One: The Trial Court Erred in Dismissing Appellant's Due Course of Law Claim Under Article I, Section 19 of the Texas Constitution**

### 1.    Constitutional Framework and Standard of Review

Article I, Section 19 of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The Texas Supreme Court has established that while the Texas Constitution's due-course-of-law guarantee is "textually different in that it refers to 'due course' rather than 'due process,'" these terms are "without meaningful distinction." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Accordingly, Texas courts "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Id.*; see also *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 262 (Tex. 2019).

The standard for evaluating a due-course claim under the Texas Constitution requires a two-part analysis: "(1) we must determine whether [the plaintiff] has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due." *Than*, 901 S.W.2d at 929. This analysis applies a "flexible standard" that depends on "the practical requirements of the circumstances." *Id.* at 930. The requirements of procedural due process "apply

11

only to the deprivation of interests protected under Article I, Section 19." *Id.* at 929.

In reviewing the trial court's dismissal under Rule 91a, this Court applies a de novo standard of review. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021). Rule 91a provides that a court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id.* 91a.1. Thus, this Court must accept as true Appellant's well-pleaded allegations and determine whether they state a legally cognizable claim for relief.

Applying this framework to Wagner's claim, the Court must first determine whether Wagner possessed a protected property interest in his continued employment with the Lamar University Police Department. Wagner's petition specifically alleges that he "had a protected interest in continued employment" that "derived from LUPD employer's handbook or policy indicating that termination may only occur for 'just cause.'" (CR174). As the Texas Supreme Court recognized in *City of Odessa v. Barton*, 967 S.W.2d 834, 835 (Tex. 1998), while employment in Texas is generally at-will, public employers may modify this relationship

through personnel policies that create legitimate expectations of continued employment absent just cause for termination.

Wagner's allegations establish more than a mere unilateral expectation of continued employment. By pleading that LUPD's policies required "just cause" for termination (CR174), combined with his twenty-one months of service as a Campus Safety Officer (CR171, CR179) and the absence of any prior disciplinary issues, Wagner has adequately alleged facts that, taken as true, establish a protected property interest sufficient to invoke the due course protections of Article I, Section 19. The trial court's failure to accept these allegations as true for purposes of the Rule 91a motion constitutes reversible error.

2. **Appellant Adequately Pleaded Facts that Established a Protected Property Interest in His Employment**

"Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*; see also *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (recognizing that a teacher's lack of formal tenure did not defeat his claim

that college's policies and practices gave rise to legitimate expectation of continued employment).

Wagner adequately pleaded facts establishing a protected property interest in his continued employment. His Third Amended Petition specifically alleged that "Wagner had a protected interest in continued employment. The expectation of continued employment derived from LUPD employer's handbook or policy indicating that termination may only occur for 'just cause.'" (CR174). This allegation directly invokes the principle recognized in *City of Odessa v. Barton*, 967 S.W.2d 834, 835 (Tex. 1998), that while employment in Texas is generally at-will, public employers may modify this relationship through personnel policies that create legitimate expectations of continued employment absent just cause for termination.

Importantly, Wagner's petition goes beyond mere conclusory assertions. He alleged specific facts demonstrating that LUPD's policies and practices modified the at-will employment relationship: (1) the existence of a handbook or policy requiring "just cause" for termination; (2) that he "received no warning" before termination; (3) that "the timeliness and reasonableness of his firing was suspect"; (4) that there was "no inquiry to determine fault, no fair investigation and no consistent rules regarding the pretext stated by Defendants"; and (5) that "there was no consideration given to Wagner's impeccable employment record." (CR174).

14

Wagner further alleged that "[e]ven if Defendant's employee handbook or policy does not explicitly provide a property interest, their past practices may establish otherwise." (CR174-175).

Under the Rule 91a standard, these allegations must be accepted as true. TEX. R. CIV. P. 91a.6. The trial court is not permitted to weigh evidence or resolve factual disputes at this stage. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021). Wagner has alleged more than a subjective expectation of continued employment; he has alleged objective policies and practices that created a legitimate claim of entitlement protected by Article I, Section 19.

While Wagner's twenty-one months of service (CR171, CR179) is shorter than the lengthy tenures often seen in property interest cases, the duration of employment alone does not determine whether a protected interest exists. As the Supreme Court recognized in *Perry v. Sindermann*, 408 U.S. at 601-02, property interests can arise from "rules or mutually explicit understandings" regardless of formal tenure status or length of service. The relevant inquiry is whether the employer's policies, practices, or representations created a legitimate expectation that could not be terminated absent just cause—precisely what Wagner has alleged here.

Moreover, Wagner's allegations regarding the circumstances of his termination support the existence of a protected interest. He was terminated immediately after being seen helping a colleague prepare an EEOC discrimination complaint (CR179-180), received no prior warning or progressive discipline (CR174), and was given no opportunity to respond to the allegations before termination (CR174). These factual allegations, which must be accepted as true under Rule 91a, demonstrate that Wagner possessed more than a mere unilateral expectation of continued employment.

For purposes of surviving a Rule 91a motion to dismiss, Wagner has adequately pleaded the existence of a protected property interest sufficient to invoke the due course protections of Article I, Section 19. The trial court erred by dismissing these claims without accepting Wagner's well-pleaded allegations as true.

3. **The Trial Court Improperly Weighed Evidence Rather Than Accepting Pleaded Facts**

In ruling on a Rule 91a motion, a court "may not consider evidence... and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. The Texas Supreme Court has emphasized that courts review Rule 91a motions de novo, accepting the plaintiff's allegations as true. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021). The court must "construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and

16

accept as true the factual allegations in the pleadings to determine whether the cause of action has a basis in law or fact." *In re Farmers Tex. County Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021).

The trial court's dismissal of Wagner's due course claim contravened these fundamental principles. The record reveals that Appellee attempted to circumvent Rule 91a's constraints by characterizing his motion as a "factual attack" that would permit the court to weigh evidence and make factual determinations. (CR217). Appellee attached human resources policies and Texas State University System Rules and Regulations to his Plea to the Jurisdiction, arguing these documents showed Wagner's position was at-will. (CR217-218). Appellee explicitly urged the court not to accept Wagner's allegations as true, stating that in a "factual attack, the Court need not assume the truth of Plaintiff's pleadings but rather must weigh the evidence presented and make factual findings necessary to resolve the jurisdictional issue." (CR217).

This approach fundamentally misapprehends the nature of a Rule 91a motion. Rule 91a provides a narrow mechanism for dismissing baseless causes of action based solely on the pleadings, not for resolving factual disputes through evidence. The rule's plain language could not be clearer: the court "may not consider evidence." TEX. R. CIV. P. 91a.6. There is no exception for a "factual

attack" under Rule 91a, and Appellee's attempt to import jurisdictional challenge procedures into a Rule 91a motion was improper.

Wagner's petition specifically alleged that he "had a protected interest in continued employment" that "derived from LUPD employer's handbook or policy indicating that termination may only occur for 'just cause.'" (CR174). He further alleged that "[e]ven if Defendant's employee handbook or policy does not explicitly provide a property interest, their past practices may establish otherwise." (CR174-175). At the Rule 91a stage, these allegations must be accepted as true, regardless of any contrary evidence Appellee might submit.

The existence of competing evidence about what the handbook actually says or whether Wagner's position was at-will creates precisely the type of factual dispute that cannot be resolved on a Rule 91a motion. As this Court has recognized, factual development belongs at summary judgment or trial, not at the pleading stage. By considering Appellee's evidence about at-will employment policies rather than accepting Wagner's well-pleaded allegations about a "just cause" requirement, the trial court improperly weighed conflicting evidence and resolved factual disputes in Appellee's favor.

This error is particularly egregious given that Wagner's Response explicitly reminded the trial court of the proper standard: "The court must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept

18

as true the factual allegations in the pleadings." (CR210). Wagner correctly argued that "this argument fails at the pleading stage" because his allegations about the property interest must be accepted as true. (CR211). The trial court's decision to disregard this standard and consider evidence outside the pleadings constitutes reversible error.

The Texas Supreme Court has repeatedly emphasized that Rule 91a motions must be decided within the four corners of the petition, giving the plaintiff the benefit of every reasonable inference. *In re Farmers*, 621 S.W.3d at 266. By straying from this standard and weighing evidence to determine whether Wagner actually had a property interest, the trial court exceeded the scope of Rule 91a and deprived Wagner of the procedural protections the rule affords. This fundamental misapplication of the legal standard requires reversal and remand for further proceedings.

4. **Appellant Was Denied Procedural Due Process**

Having established a protected property interest, the inquiry turns to "what process is due." *Than*, 901 S.W.2d at 930. The Texas Supreme Court has emphasized that "[d]ue process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Court applies a three-factor test to determine what process is due in a particular situation: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of

19

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* (citing *Mathews*, 424 U.S. at 335).

The Court in *Than* explicitly distinguished between academic dismissals, which "arise from a failure to attain a standard of excellence in studies," and disciplinary dismissals, which "arise from acts of misconduct." *Id.* at 931. For disciplinary matters, the Court held that "due process requires some level of process beyond the informal hearing" and emphasized that "university officials presumably act in good faith bringing charges... [but] there is a significant risk of error because the controlling facts are in dispute." *Id.* at 930.

Applying the *Mathews* factors to Wagner's case demonstrates that he was denied constitutionally required procedural protections:

**First, the private interest affected was substantial.** Wagner's employment as a Campus Safety Officer provided his livelihood and professional identity. His termination not only deprived him of wages and benefits but also damaged his professional reputation and future employment prospects. The stigmatizing nature of his dismissal—with false rumors circulating that he was terminated for coming to work drunk (CR180)—compounded the injury to his reputation and standing in

20

the law enforcement community. As this Court recognized in *Than*, such reputational harm accompanying termination heightens the private interest at stake. 901 S.W.2d at 930 (citing *Goss v. Lopez*, 419 U.S. 565, 575 (1975)).

**Second, the risk of erroneous deprivation was extraordinarily high given the complete absence of procedural safeguards.** Wagner was summoned to the police department under the false pretense of a "uniform inventory" (CR180), only to be ambushed in a conference room where his termination had already been decided. He received no advance notice of the charges against him, no opportunity to review the evidence, and no chance to present his side of the story before the termination decision was made. (CR174, CR180). Chief Flores "began to speak and made false accusations against Wagner" while repeatedly questioning him about his assistance to Pompa, despite already knowing this information. (CR180). The value of even minimal procedural safeguards—such as advance notice of charges, access to evidence, and a pre-termination hearing— would have been significant in preventing this erroneous deprivation.

**Third, the government's interest in immediate termination without process was minimal, while the burden of providing basic due process would have been negligible.** There was no emergency justifying Wagner's immediate removal. He had served without incident for twenty-one months (CR171, CR179), and the alleged policy violation occurred while he was off duty (CR179). Sergeant

21

Martin had observed Wagner at Gentry Hall and made no objection or instruction that he should leave (CR180). The government's legitimate interest in maintaining discipline and enforcing policies would actually have been better served by providing fair procedures to ensure accurate determinations. As *Than* emphasized, "the burden on [the government] of providing this procedural safeguard" must be weighed against the risk of error. 901 S.W.2d at 932. Here, providing basic notice and a hearing would have imposed minimal burden while substantially reducing the risk of erroneous termination.

Critically, Wagner's termination constituted a disciplinary dismissal requiring heightened procedural protections. The stated basis for termination was an alleged violation of confidentiality policy—a purported act of misconduct, not a performance deficiency. Under *Than*'s framework, such disciplinary dismissals create "a significant risk of error because the controlling facts are in dispute." *Id.* at 930. Yet Wagner received even less process than the plaintiff in *Than*, who at least had some opportunity to present his case. Wagner was denied any meaningful opportunity to respond to the allegations before or after his termination. His post-termination grievance filed on August 21, 2019, seeking preservation of video evidence that could exonerate him, was effectively ignored. (CR180, CR186).

These procedural deficiencies are particularly egregious given that Wagner alleged there was "no inquiry to determine fault, no fair investigation and no

22

consistent rules regarding the pretext stated by Defendants," and "no consideration given to Wagner's impeccable employment record." (CR174). The complete absence of procedural protections—no notice, no hearing, no investigation, no consideration of his employment history—violated the minimal requirements of due process under Article I, Section 19 of the Texas Constitution.

As in *Than*, where the Court found a due process violation when the plaintiff "was excluded from a portion of the evidentiary proceedings" and "was given neither a contemporaneous nor an after-the-fact opportunity to respond," Wagner's case presents an even starker denial of basic procedural fairness. 901 S.W.2d at 932. The trial court's dismissal of these claims without recognizing these fundamental procedural violations constitutes reversible error.

### 5. <u>The Proper Remedy for a Due Process Violation is Due Process</u>

The Texas Supreme Court has consistently held that "the remedy for a denial of due process is due process." *Than*, 901 S.W.2d at 933; see also *Mosley*, 593 S.W.3d at 269. In *Than*, after finding that a medical student's due process rights had been violated, the Court held that he was entitled to a new hearing before any sanction could be imposed. 901 S.W.2d at 933. The Court explicitly rejected the university's argument that the plaintiff was not entitled to any relief despite the due process violation, stating: "We reverse the judgment of the court of appeals and remand the cause to the trial court for proceedings consistent with this opinion." *Id.* at 934. Similarly, in *Mosley*, the Court directed the agency to "reinstate [the

23

plaintiff's] administrative case to afford her an opportunity" to exercise the rights she had been denied. 593 S.W.3d at 269.

The trial court's dismissal of Wagner's claims with prejudice (CR223) stands in stark contrast to the Texas Supreme Court's approach in *Than* and *Mosley*. Rather than providing Wagner with the process he was denied, the trial court compounded the constitutional violation by foreclosing any possibility of remedy. This approach renders Article I, Section 19's protections meaningless—what value does a constitutional guarantee have if its violation results in no relief whatsoever?

Wagner sought precisely the type of relief the Texas Supreme Court has consistently ordered in due process cases. His petition explicitly states: "Plaintiff seeks only equitable relief under the Texas Constitution. Plaintiff seeks reinstatement." (CR176). He requested either "reinstatement, or in lieu of reinstatement, front pay as equitable relief" (CR177)—not monetary damages for the constitutional violation itself, but rather the opportunity to have the fair process he should have received in the first place.

The appropriate remedy for Wagner's situation could take several forms, all consistent with *Than*'s mandate that due process violations be remedied by providing process:

First, Wagner could be afforded a pre-termination hearing where he can present his side of the story, respond to the allegations against him, and have his

24

employment record considered—the basic procedural protections he was denied on August 14, 2019.

Second, Wagner could be provided a name-clearing hearing to address the false and stigmatizing statements that he was terminated for coming to work drunk (CR180), giving him the opportunity to clear his name that was denied when his post-termination grievance was ignored.

Third, consistent with LUPD's own policies and procedures, Wagner could be granted a grievance hearing where he can challenge the basis for his termination, present evidence including the video footage he sought to preserve (CR180), and have a neutral decision-maker evaluate whether just cause existed for his termination.

Any of these remedies would be consistent with *Than*'s holding that "the remedy for a denial of due process is due process." 901 S.W.2d at 933. What is not consistent with *Than* is the trial court's approach of dismissing all claims with prejudice, eliminating any possibility that Wagner will ever receive the procedural protections guaranteed by the Texas Constitution.

The practical implications of the trial court's approach are troubling. If a government employer can violate an employee's due process rights with impunity, and the employee's only recourse—seeking equitable relief to obtain the process that was denied—can be dismissed at the pleading stage, then the Texas

25

Constitution's due course guarantee becomes a nullity for public employees. This cannot be the law, as *Than* makes abundantly clear.

Wagner is not seeking a windfall or attempting to circumvent limitations on damages for constitutional violations. He seeks only what he should have received on August 14, 2019: notice of the charges against him, an opportunity to respond, consideration of his employment record, and a fair determination of whether just cause existed for his termination. The Texas Supreme Court has repeatedly held that this is precisely the remedy required when due process is denied.

The trial court's dismissal with prejudice must be reversed. Wagner is entitled to pursue his claim for equitable relief and to receive the process that was unconstitutionally denied. To hold otherwise would eviscerate the protections of Article I, Section 19 and directly contradict the Texas Supreme Court's clear mandate in *Than* that constitutional violations must be remedied by providing the process that was initially denied.

6. **The Texas Constitution Provides an Independent Cause of Action for Equitable Relief**
While Texas does not recognize a common law cause of action for damages to enforce constitutional rights, the Texas Supreme Court has expressly held that "suits for equitable remedies for violation of constitutional rights are not prohibited." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). This

critical distinction between damages and equitable relief establishes the viability of Wagner's constitutional claim.

Wagner's petition carefully and deliberately sought only equitable relief. He explicitly stated: "Plaintiff seeks only equitable relief under the Texas Constitution. Plaintiff seeks reinstatement." (CR176). His prayer for relief requested either "reinstatement, or in lieu of reinstatement, front pay as equitable relief" (CR177)—not monetary damages for the constitutional violation itself, but rather equitable remedies designed to restore him to the position he would have occupied absent the constitutional violation.

The Texas Supreme Court's decision in *Than* demonstrates that equitable remedies are not merely theoretical but are actively granted to correct procedural violations of constitutional rights. After finding a due process violation, the *Than* Court ordered a new hearing for the plaintiff—a purely equitable remedy. 901 S.W.2d at 933-34. The Court explicitly rejected the university's argument that the plaintiff was not entitled to any relief despite the due process violation, emphasizing that constitutional violations require remediation through appropriate equitable means. *Id.*

Appellee's motion to dismiss relied heavily on cases that reject damages claims for constitutional violations, but these authorities are inapposite to Wagner's claim for equitable relief. For instance, Appellee cited *Turner v. Texas Dept. of*

*Mental Health*, 920 S.W.2d 415, 419 (Tex. App.—Austin 1996, writ denied), which held there is no private right of action for money damages under the due course clause. (CR91, CR219). Similarly, Appellee invoked *Texas A&M University System v. Luxemburg*, 93 S.W.3d 410, 425 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), *University of Texas System v. Courtney*, 946 S.W.2d 464, 468-69 (Tex. App.—Fort Worth 1997, writ denied), and *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007). (CR91, CR219-220).

Each of these cases stands for the narrow proposition that monetary damages are not recoverable for violations of the Texas Constitution. None of these authorities suggests that equitable relief is similarly barred. Indeed, *Bouillion* itself acknowledged this critical distinction, and subsequent courts have consistently recognized that while damage remedies are foreclosed, equitable remedies remain available. 896 S.W.2d at 149.

The nature of the relief Wagner seeks falls squarely within recognized forms of equitable relief. Reinstatement is a quintessential equitable remedy that restores the status quo ante and provides the procedural protections that were initially denied. Front pay, offered as an alternative to reinstatement, is likewise recognized as equitable relief rather than compensatory damages, designed to make the plaintiff whole when reinstatement is impracticable. Federal courts have long recognized front pay as an equitable remedy in employment contexts, and Texas

courts applying *Bouillion* have not foreclosed such relief for constitutional violations.

Moreover, Wagner's request for a hearing or opportunity to clear his name constitutes precisely the type of procedural remedy that *Than* demonstrates is available. Just as the *Than* Court ordered a new hearing to remedy the due process violation, Wagner seeks the opportunity to have the fair process he was denied on August 14, 2019—advance notice of charges, an opportunity to respond, and consideration of his nineteen-year employment record before termination.

The trial court's dismissal conflated Wagner's equitable relief claim with the damages claims properly rejected in the cases Appellee cited. This represents a fundamental legal error. *Bouillion*'s express preservation of equitable remedies for constitutional violations means that Wagner's carefully pleaded claim for reinstatement and related equitable relief states a viable cause of action under Article I, Section 19 of the Texas Constitution.

The practical implications of denying equitable relief would eviscerate constitutional protections for public employees. If government employers can violate procedural due process rights with impunity, knowing that neither damages nor equitable relief is available, then the Texas Constitution's due course guarantee becomes meaningless. *Bouillion* and *Than* foreclose such an untenable result by preserving the availability of equitable remedies to vindicate constitutional rights.

Because Wagner alleged facts establishing a protected property interest in his employment, demonstrated the denial of procedural due process, and sought only appropriate equitable relief in the form of reinstatement or alternative equitable remedies, the trial court erred in dismissing his due course of law claim. His claims fall squarely within the recognized exception to the no-damages rule articulated in *Bouillion* and applied in *Than*. This Court should reverse the trial court's dismissal and remand for further proceedings on Wagner's viable claim for equitable relief under Article I, Section 19 of the Texas Constitution.

## B. Issue Two: The Trial Court Erred in Dismissing Appellant's Liberty Interest "Stigma-Plus" Claim

### 1. The Texas Constitution Protects Liberty Interests in Reputation When Coupled With Government Employment Action

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. This due course of law guarantee protects not only property interests but also liberty interests, including a person's reputation when governmental action threatens both reputational and tangible interests.

The Texas Supreme Court has long recognized that procedural due process must be satisfied "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). When government action both

30

damages reputation and affects a more tangible interest such as employment, a protectable "stigma-plus" liberty interest exists. *See Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 255-56 (Tex. 2019) (finding a protected liberty interest where government action threatened both reputation and employment prospects).

This constitutional protection derives from the fundamental principle that liberty interests encompass "the right of the individual to contract, to engage in any of the common occupations of life, [and] to acquire useful knowledge." *Than*, 901 S.W.2d at 929 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)). The "stigma-plus" doctrine recognizes that while reputation alone may not trigger constitutional protection, the combination of reputational harm with tangible government action—such as termination of employment—creates a constitutionally cognizable injury requiring due process protection.

In *Than*, the Texas Supreme Court held that a medical student charged with academic dishonesty had a constitutionally protected liberty interest because the charges threatened "not only serious damage to his reputation but also the loss of his chosen profession." *Id.* at 930. The Court explained that "[t]he stigma is likely to follow the student and preclude him from completing his education at other institutions." *Id.* Similarly, in *Mosley*, the Court recognized that placement on an employment misconduct registry implicated protected liberty interests because it

31

"threatens not only [the plaintiff's] right to engage in employment as a caregiver by effectively ending her career, but also damages her 'good name, reputation, [and] honor.'" 593 S.W.3d at 262.

Texas courts follow the federal framework established in *Paul v. Davis*, 424 U.S. 693 (1976), which requires that stigmatizing government action be coupled with alteration of legal status or deprivation of a right—the "plus" factor—to invoke constitutional protection. Disciplinary dismissals from government employment satisfy this requirement because they carry sufficient stigma to implicate protected liberty interests, "particularly when they could seriously damage one's standing and interfere with later opportunities for employment." *Than*, 901 S.W.2d at 930 (citing *Goss v. Lopez*, 419 U.S. 565, 575 (1975)).

The constitutional protection afforded to these liberty interests serves important societal purposes. As the United States Supreme Court recognized in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), the government cannot "brand" a person without providing basic procedural safeguards. This principle applies with particular force in the employment context, where false accusations of misconduct can follow an individual throughout their career, effectively foreclosing future employment opportunities in their chosen field.

Importantly, this liberty interest protection provides an independent basis for relief separate and distinct from any property interest claim. Even where a plaintiff

32

may lack a protected property interest in continued employment, the liberty interest in reputation coupled with government employment action can independently trigger due process requirements. The trial court's failure to recognize this alternative constitutional ground constituted reversible error.

2. **<u>Appellant Properly Pled a "Stigma-Plus" Liberty Interest Claim</u>**

Appellant's Third Amended Petition sufficiently alleged each element of a viable "stigma-plus" claim under the Texas Constitution. The petition demonstrates that Wagner understood and specifically pleaded the required test for establishing this liberty interest claim.

In his Third Amended Petition, Wagner explicitly set forth the governing standard, alleging that he "establishes a property interest under the Section 1983 'stigma-plus' claim in connection with his discharge from employment." (CR174-175). Wagner then quoted the precise legal test, stating: "To prevail on this claim, Wagner must prove '(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing.'" (CR174) (citing *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042-43 (11th Cir. 1989)).

Having identified the applicable legal standard, Wagner then provided specific factual allegations supporting each required element. The petition alleged: "False and stigmatizing statements were made public in connection with Wagner's

33

discharge. Specifically, on August 16, 2019, Wagner was made aware of a rumor around the campus that he had been terminated because he came to work drunk." (CR174-175). These allegations are not mere legal conclusions but specific factual assertions about what occurred, when it occurred, and the nature of the stigmatizing statement.

Wagner's sworn affidavit provides additional factual support for each element of the claim. In his affidavit, Wagner testified: "On August 16, 2019, I was told the rumor around the campus was that I had been terminated because I came to work drunk. This was not true." (CR180). He further attested: "I was terminated in retaliation for helping Kandy Pompa stand up against the false accusations made against her as well as [giving statements in support of] the fact that she [was] terminated for discriminatory reasons." (CR181). These sworn statements provide the factual foundation demonstrating that the rumor was both false and connected to his termination.

Examining Wagner's allegations against each element of the "stigma-plus" test reveals that he properly pleaded a viable claim:

First, Wagner alleged a false statement—that he came to work drunk. His affidavit explicitly states: "This was not true." (CR181). This is a specific factual allegation about the falsity of the rumor, not a legal conclusion.

34

Second, the stigmatizing nature of the statement is apparent on its face. An accusation that a law enforcement officer came to work intoxicated is inherently stigmatizing, particularly in the context of campus security where public safety is paramount. Such allegations directly impugn Wagner's professional competence and integrity.

Third, Wagner alleged the statements were made public, specifically stating that the rumor circulated "around the campus." (CR174-175, CR181). This establishes public dissemination beyond a private communication between employer and employee.

Fourth, the timing and context establish that the statements were made by or in connection with the governmental employer. The rumor emerged immediately after Wagner's termination on August 14, 2019, with Wagner learning of it just two days later on August 16, 2019. (CR181).

Fifth, the "plus" factor—connection to discharge—is explicitly alleged. The rumor specifically stated that Wagner "had been terminated because he came to work drunk." (CR174-175, emphasis added). This directly links the stigmatizing statement to the governmental employment action.

Sixth, Wagner was denied any meaningful opportunity to clear his name. The petition alleges he "received no warning" before termination, there was "no inquiry to determine fault, no fair investigation," and "no consideration given to

35

Wagner's impeccable employment record." (CR174). Wagner was terminated without any pre-termination process, and the stigmatizing rumor spread before he had any opportunity to respond or refute it. He asked to present a grievance and no response ever came. (CR186).

Under the Rule 91a standard, these allegations must be accepted as true. The court "may not consider evidence" and must "decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6.

Wagner's pleadings far exceed the threshold for surviving dismissal under Rule 91a. He did not merely recite legal conclusions but provided specific factual allegations supported by sworn testimony establishing each element of a "stigma-plus" claim. The trial court's dismissal cannot be reconciled with the requirement that it accept these well-pleaded allegations as true. Whether the rumor actually circulated, whether it was actually false, or whether the government was responsible for its dissemination are factual questions that cannot be resolved on a Rule 91a motion to dismiss.

The Texas Supreme Court has recognized that government employees facing termination under stigmatizing circumstances possess protected liberty interests requiring due process protection. *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (recognizing due process must be satisfied "where a person's good name, reputation, honor, or integrity is at stake because of what the

36

government is doing to him"); *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 255-56 (Tex. 2019) (finding protected liberty interest where government action threatened both reputation and employment prospects).

Wagner's allegations, accepted as true, establish precisely such a violation. The following subsections will examine each element in detail, but for purposes of surviving a Rule 91a motion, Wagner has clearly alleged sufficient facts to state a viable "stigma-plus" liberty interest claim under the Texas Constitution's due course of law provision. The trial court erred in dismissing this properly-pleaded constitutional claim.

### 3. <u>False and Stigmatizing Statements</u>

Having established the constitutional framework for stigma-plus claims, this Court must examine whether Wagner properly alleged the first two elements: (1) a false statement and (2) of a stigmatizing nature. The record demonstrates that Wagner satisfied both requirements, and the trial court erred by dismissing his claim at the pleading stage.

***The Statement Was False***

Wagner's Third Amended Petition and supporting affidavit establish that false statements were made about his termination. Specifically, Wagner alleged that "[o]n August 16, 2019, [he] was told the rumor around the campus was that [he] had been terminated because [he] came to work drunk." (CR181). In his sworn affidavit, Wagner unequivocally stated: "This was not true." (CR181).

Wagner further testified that the actual reason for his termination was "in retaliation for helping Kandy Pompa stand up against the false accusations made against her as well as the fact that she was terminated for discriminatory reasons." (CR181). This stark discrepancy between the rumored reason—workplace intoxication—and Wagner's sworn testimony regarding the true retaliatory motive establishes the falsity of the statement.

Under Rule 91a's standard, Wagner's sworn testimony that the rumor was false must be accepted as true. The trial court cannot weigh evidence or assess credibility at the dismissal stage. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (courts must accept pleaded facts as true and draw reasonable inferences in plaintiff's favor). Wagner's affidavit stating the rumor was false provides sufficient factual basis for this element at the pleading stage. Whether Wagner was actually intoxicated is a factual dispute that cannot be resolved on a Rule 91a motion but must await discovery and trial.

### The Statement Was Inherently Stigmatizing

The false accusation that Wagner came to work drunk is precisely the type of stigmatizing statement that implicates protected liberty interests. The Texas Supreme Court has recognized that statements are stigmatizing when they impugn an individual's "good name, reputation, honor, or integrity" in connection with government employment action. *Than*, 901 S.W.2d at 930.

38

An accusation of workplace intoxication for a campus safety officer is inherently stigmatizing for several reasons. First, it directly attacks Wagner's professional competence and fitness for duty. Campus safety officers are entrusted with maintaining security, responding to emergencies, and protecting students and staff. An officer who reports to work intoxicated violates the most fundamental requirements of the position—the ability to exercise sound judgment and ensure public safety.

Second, this type of accusation carries implications that extend far beyond job performance. It suggests moral failings and lack of self-control that would damage Wagner's reputation in both professional and personal spheres. As the Supreme Court recognized in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), public identification as an excessive drinker inflicts stigma that "follows the individual" throughout the community.

Third, and most critically for Wagner's future employment prospects, an accusation of on-duty intoxication would effectively preclude him from obtaining similar positions in law enforcement or security. These fields universally require background checks, employment verifications, and inquiries into reasons for termination. A campus safety officer terminated for workplace intoxication would face insurmountable barriers to future employment in his chosen profession.

The stigmatizing nature of Wagner's accusation equals or exceeds that recognized in controlling precedent. In *Than*, the Court found that accusations of academic dishonesty were stigmatizing because "[t]he stigma is likely to follow the student and preclude him from completing his education at other institutions." 901 S.W.2d at 930. Similarly, in *Mosley*, placement on an employment misconduct registry was stigmatizing because it "threatens not only [the plaintiff's] right to engage in employment as a caregiver by effectively ending her career, but also damages her 'good name, reputation, [and] honor.'" 593 S.W.3d at 262.

Wagner's situation presents an even more severe stigma. While academic dishonesty affects educational opportunities and misconduct registries limit specific career paths, an accusation of workplace intoxication for a law enforcement officer goes to the very core of professional fitness. It suggests not merely a lapse in judgment or violation of rules, but a fundamental inability to perform essential safety functions. This is the type of charge that, as recognized in *Goss v. Lopez*, can "seriously damage [one's] standing and associations in his community" and "interfere with later opportunities for . . . employment." *Goss v. Lopez*, 419 U.S. 565, 575.

The fact that Wagner had maintained a clean employment record prior to this incident (CR174) heightens the stigmatizing impact. After years of service without discipline, the sudden accusation of such serious misconduct would be

40

particularly damaging to his professional reputation within the law enforcement community.

For these reasons, Wagner has clearly alleged statements that satisfy the "false" and "stigmatizing" requirements of his stigma-plus claim. The trial court's dismissal at the pleading stage was improper, as these elements are sufficiently established under the Rule 91a standard that requires accepting Wagner's factual allegations as true. Whether the statements were actually false and the full extent of their stigmatizing effect are matters for trial, not dismissal on the pleadings.

### 4.  Public Disclosure

The third and fourth elements of a stigma-plus claim require that the false and stigmatizing statements be "made public" and made "by the governmental employer." Wagner's allegations satisfy both requirements.

*The Statements Were Made Public*

To satisfy the "made public" requirement, a plaintiff need not demonstrate publication in newspapers or mass media. Rather, disclosure to "some segment of the public" is sufficient to establish this element. See *Paul v. Davis*, 424 U.S. 693, 711 (1976) (disclosure to merchants in community sufficient); *Bishop v. Wood*, 426 U.S. 341, 348 (1976). The relevant inquiry is whether the statements were disseminated within the community where the plaintiff's reputation matters.

Wagner specifically alleged that "[o]n August 16, 2019, [he] was told the rumor around the campus was that [he] had been terminated because [he] came to work

41

drunk." (CR181). This "rumor around the campus" language establishes campus-wide dissemination of the false statement. (CR174-175). The fact that Wagner learned of the rumor from others merely two days after his termination demonstrates its public nature—the statement was not confined to a private conversation between individuals but had circulated throughout the campus community.

The Lamar University campus constitutes the relevant public for purposes of stigma-plus analysis. As the Texas Supreme Court recognized in *Than*, the academic community where a plaintiff works represents the appropriate public for evaluating whether stigmatizing statements have been made public. *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Similarly, in *Mosley*, the Court found public disclosure where a registry was accessible to potential employers. *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 255-56 (Tex. 2019). Here, Wagner's professional community consisted of his co-workers at LUPD, other Lamar University employees, and the students he served as a Campus Safety Officer. The circulation of the drunk-on-duty rumor throughout this community satisfies the public disclosure requirement.

### The Statements Were Made by the Government Employer

The "by the governmental employer" element does not require proof that a specific government official personally made the statement. Rather, courts examine

42

whether the stigmatizing statements were made "in connection with" the government's employment action. See *Codd v. Velger*, 429 U.S. 624, 628 (1977).

Wagner's allegations establish this connection. The rumor specifically concerned the reason for Wagner's termination from LUPD—a government employment action. (CR174-175). The temporal proximity between Wagner's termination on August 14, 2019, and the circulation of the rumor by August 16, 2019, demonstrates that the false statement arose in direct connection with the government's discharge decision. (CR180-181). Those with knowledge of the circumstances surrounding Wagner's termination were necessarily LUPD personnel involved in the termination process, including Chief Flores, Sergeant Monica Ryan, Lieutenant Brent Sonnier, and Brenda Dixon, who were all present at Wagner's termination meeting. (CR180-181).

Moreover, the rumor purported to explain the government's reason for terminating Wagner—that he "came to work drunk." This false explanation for a government employment action cannot be separated from the governmental employer's conduct. The stigmatizing statement was not random campus gossip but specifically addressed why LUPD terminated Wagner, thereby establishing the requisite connection to the governmental employer.

At the Rule 91a stage, Wagner need not identify the precise source of the rumor. His sworn statement that the rumor circulated "around the campus" in

connection with his termination must be accepted as true. Discovery, not a Rule 91a motion, provides the appropriate venue for tracing the rumor's exact origin. Wagner has sufficiently alleged that false and stigmatizing statements were made public by or in connection with his governmental employer's actions, satisfying the third and fourth elements of his stigma-plus claim.

5. **Connection to Termination**

The "plus" element of Appellant's stigma-plus claim is unequivocally satisfied through the direct connection between the false, stigmatizing statements and his termination from employment. The United States Supreme Court established in *Paul v. Davis* that reputation harm alone does not implicate constitutional protections; rather, the stigma must be coupled with "a right or status previously recognized by state law." *Paul v. Davis*, 424 U.S. 693, 701-02 (1976). This requirement distinguishes constitutionally protected liberty interests from ordinary state law defamation claims.

Here, the stigmatizing statements about Wagner were made in direct and immediate connection with his termination from employment—satisfying the critical "plus" factor that elevates reputation damage to a constitutional violation. The temporal and substantive nexus between Wagner's termination and the stigmatizing rumors is undeniable.

Wagner was terminated on August 14, 2019. (CR171, CR180). Merely two days later, on August 16, 2019, Wagner learned that "the rumor around the campus

44

was that [he] had been terminated because [he] came to work drunk." (CR54, CR180). This exceptionally tight temporal proximity—a mere 48-hour window—establishes an unmistakable connection between the government employment action and the dissemination of false, stigmatizing information.

More critically, the rumor was not merely coincidental to Wagner's termination; it purported to explain the very reason for his discharge. The false statement that Wagner "had been terminated because [he] came to work drunk" (CR180) directly linked the stigma to the employment action itself. This was not a separate reputational harm that happened to occur near the time of termination—it was a false characterization of the termination's cause, inextricably binding the stigma to the government's employment decision.

The petition's allegations explicitly recognize this essential connection, stating that "[f]alse and stigmatizing statements were made public in connection with Wagner's discharge." (CR174-175). Wagner further alleged his "stigma-plus claim in connection with his discharge from employment." (CR174). These allegations, which must be accepted as true under Rule 91a standards, establish the requisite nexus between the stigmatizing statements and the tangible government action.

This case follows the pattern recognized by the Texas Supreme Court in both *Than* and *Mosley*. In *Than*, the Court found a protected liberty interest where

45

a medical student faced dismissal coupled with accusations of academic dishonesty—recognizing that charges of dishonesty accompanying dismissal implicate due process protections. 901 S.W.2d at 930. Similarly, in *Mosley*, the Court held that termination coupled with placement on a misconduct registry that would foreclose future employment opportunities created a protected liberty interest. 593 S.W.3d at 262.

Wagner's circumstances present the same constitutional concerns: termination from his position as a Campus Safety Officer (the tangible government action) coupled with false allegations of intoxication on duty (the stigmatizing charge). The combination of these elements—not either standing alone—creates the constitutional violation requiring due process protection.

The Supreme Court explained this principle clearly in *Board of Regents v. Roth*: while reputation alone is not a liberty or property interest protected by due process, when government action both damages reputation and alters legal status or rights, constitutional protections attach. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). Here, Wagner lost his position after 21 months of employment, along with the income, benefits, and professional standing that position provided—a clear alteration of legal status. When coupled with the false intoxication rumors that threatened his future employability in law enforcement and security positions, the constitutional threshold is met.

This direct connection distinguishes Wagner's claim from ordinary defamation. Had LUPD merely spread false rumors about Wagner without terminating him, he might have a state tort claim but no constitutional remedy. Conversely, had Wagner been terminated without any accompanying stigma, he would lack the "stigma" component of a stigma-plus claim. But here, where the false stigmatizing statement specifically concerned the reason for his termination and circulated immediately following his discharge, the "plus" factor is clearly established.

The but-for causation is evident: without Wagner's termination on August 14, 2019, there would be no rumor that he was "terminated because [he] came to work drunk." (CR181) The stigmatizing statement exists solely because of, and in reference to, the termination itself. This intrinsic connection between the government employment action and the reputational harm satisfies the "plus" requirement and properly invokes constitutional due process protections under Article I, Section 19.

### 6.  <u>No Meaningful Opportunity to Clear His Name</u>
The sixth and final element of a "stigma-plus" claim requires that the plaintiff be denied a meaningful opportunity to clear his name before or after the stigmatizing statements were made public. *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995); see also *Board of Regents v. Roth*, 408 U.S. 564, 573 n.12 (1972) (recognizing that due process requires opportunity to

47

refute stigmatizing charges). This element ensures that when government action threatens both reputation and tangible interests, the affected individual receives the fundamental procedural protections guaranteed by the Texas Constitution.

### *Defining "Meaningful Opportunity"*

A "meaningful opportunity" to clear one's name requires more than an empty formality—it demands notice of the charges and a hearing at a meaningful time and in a meaningful manner. *Than*, 901 S.W.2d at 930. The opportunity must occur either before the stigmatizing action is taken or promptly thereafter, while mitigation of reputational harm remains possible. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (pre-termination hearing is essential component of due process). Critically, the employee must have actual notice of the allegations against him and a genuine chance to present his side of the story before decision-makers willing to consider the evidence.

### *Wagner Received No Pre-Termination Process*

The record unequivocally demonstrates that Wagner was denied any meaningful opportunity to address the charges before his termination. Wagner's affidavit establishes that on August 14, 2019, at approximately noon, he "received a phone call from Sgt. Monica Ryan and she stated I needed to come to the police department with my equipment and uniforms for inventory." (CR180). This seemingly routine administrative request was, in fact, a calculated deception.

48

Instead of the promised inventory, Wagner "was brought into the conference room" where Chief Flores, Lieutenant Sonnier, Sergeant Ryan, and Brenda Dixon from Human Resources had already assembled. (CR180). The decision to terminate Wagner had already been made—this was not a hearing but an ambush. As Wagner states: "Chief Flores began to speak and made false accusations against me which I recorded for my own protection." (CR180-181).

Wagner's Third Amended Petition reinforces these facts, alleging he "received no warning" and that "[t]here was no inquiry to determine fault, no fair investigation, and no consistent rules regarding the stated reason for his termination." (CR174). Moreover, "[t]here was no consideration given to Wagner's employment record." (CR174). These allegations, which must be accepted as true at this stage, establish the complete absence of pre-termination process.

### The Ambush Nature of the Termination Meeting

The circumstances of Wagner's termination meeting underscore the denial of any meaningful opportunity to be heard. Called in under the false pretense of a "uniform inventory," Wagner walked into a room where his fate had already been sealed. (CR180-181). Though Chief Flores and others "asked repeatedly about Kandy Pompa, what he was doing with her, and what she was doing at the campus," Wagner's explanations fell on deaf ears. (CR180). Wagner told them he "was there to give a statement for Pompa and that Hebert was doing the same

49

thing," but Chief Flores "and the others already knew this information" and continued their predetermined course. (CR181).

This orchestrated ambush bears no resemblance to the meaningful hearing required by due process. In *Than*, the Texas Supreme Court emphasized that when "the controlling facts are in dispute," there exists "a significant risk of error" that necessitates adequate procedural safeguards. 901 S.W.2d at 930. Here, Wagner was afforded no such safeguards—no advance notice of charges, no opportunity to prepare a defense, no chance to present evidence or witnesses, and no impartial decision-maker genuinely considering the facts.

### Denial of Access to Exculpatory Evidence

Compounding the constitutional violation, Wagner was systematically denied access to evidence that could have cleared his name. His affidavit states: "Before this meeting I was denied access to our LUPD.org portal and I was already unable to access the video from the night of the allegation." (CR181). This video evidence was crucial to refuting the false accusations against him, yet he was deliberately prevented from obtaining it.

Even after his termination, Wagner's attempts to preserve and access this evidence were thwarted. He "asked that this video be preserved in my grievance from August 21, 2019," but received no meaningful response. (CR181). A genuine opportunity to clear one's name necessarily includes access to relevant evidence.

50

By denying Wagner the very tools needed to defend himself, Appellees ensured that any purported "opportunity" to be heard would be meaningless. They also never gave him that opportunity despite his request. (CR186).

### *No Post-Termination Name-Clearing Hearing*

The constitutional deficiency extends beyond the absence of pre-termination process. Wagner was never afforded a post-termination hearing to address the stigmatizing charges that quickly spread across campus. By August 16, 2019— merely two days after his termination—Wagner learned that "the rumor around the campus was that I had been terminated because I came to work drunk." (CR54, CR181). This false and highly damaging rumor threatened Wagner's reputation and future employment prospects, yet no forum was provided where he could refute it.

While Appellees may point to a grievance process, Wagner's petition and affidavit make clear that this mechanism was wholly inadequate. Like the plaintiff in *Than*, who was entitled to a new hearing after being denied due process, Wagner required a genuine opportunity to confront and refute the false charges—not a paper process where his protests would be ignored. See *Than*, 901 S.W.2d at 933 (ordering new hearing where plaintiff was denied meaningful opportunity to respond).

### *The Timing Problem: Too Little, Too Late*

The temporal sequence of events underscores the constitutional violation. Wagner was terminated without warning on August 14, 2019. (CR171, CR179).

The false rumor that he was drunk at work was circulating by August 16, 2019. (CR181). By the time Wagner could even attempt to respond through the grievance process on August 21, 2019, the reputational damage was complete. (CR181).

This timeline illustrates why timing is critical to the "meaningful opportunity" analysis. A hearing weeks or months after stigmatizing statements have spread cannot undo reputational harm already inflicted. As the Supreme Court recognized in *Loudermill*, the right to be heard must be granted "at a meaningful time." 470 U.S. at 542. For Wagner, that meaningful time had passed before he even knew what charges had been leveled against him.

### *Comparison to Than: Same Violation, Same Required Remedy*

Wagner's situation mirrors the due process violation in *Than*, where a medical student faced dismissal for academic dishonesty without adequate procedural protections. The *Than* court found a constitutional violation where the plaintiff "was given neither a contemporaneous nor an after-the-fact opportunity to respond" to evidence used against him. 901 S.W.2d at 932. Similarly, Wagner received neither advance notice of the charges nor any subsequent opportunity to clear his name of the drunk-at-work allegation that now follows him.

The parallel extends to the remedy required. In *Than*, the Court held that the student was entitled to a new hearing before any sanctions could be imposed. Id. at 933. Wagner seeks the same relief—a meaningful opportunity to clear his name

52

that he was unconstitutionally denied. The burden on Appellees to provide such basic procedural protections would have been minimal, yet they chose the path of ambush and obfuscation instead.

### *Distinguishing Anticipated Counterarguments*

Appellees will likely argue that Wagner could have requested a post-termination hearing or that the grievance process satisfied due process requirements. Both arguments fail. First, the burden rests on the government employer to provide due process, not on the terminated employee to request it. Second, Wagner did attempt to use the grievance process, specifically requesting preservation of video evidence on August 21, 2019 (CR181), but this proved futile. An illusory process that ignores the employee's submissions does not satisfy constitutional requirements.

Appellees may also contend that the termination meeting itself constituted an opportunity to be heard. This argument is belied by Wagner's unrebutted allegations that the decision was already made, that he was lured under false pretenses, and that his explanations were disregarded. (CR180-181). A sham proceeding where the outcome is predetermined provides no meaningful opportunity to clear one's name.

Wagner has adequately pleaded that he was denied any meaningful opportunity—before or after his termination—to clear his name of the false and

stigmatizing charges made against him. Called to the police department under false pretenses, ambushed with a predetermined termination, denied access to exculpatory evidence, and left without recourse as damaging rumors spread across campus, Wagner experienced precisely the kind of reputational assassination without due process that the stigma-plus doctrine exists to prevent.

All six elements of Appellant's stigma-plus claim have now been established: (1) Wagner was a public employee; (2) who was discharged; (3) in connection with false and stigmatizing statements; (4) that were made public; (5) with a clear connection to his termination; and (6) without any meaningful opportunity to clear his name. The trial court's dismissal of this viable constitutional claim constitutes reversible error requiring remand for further proceedings.

### 7. <u>The Trial Court Erred in Dismissing This Claim</u>

The trial court erred in dismissing Appellant's "stigma-plus" liberty interest claim when Appellant properly pleaded all six essential elements of this constitutional claim. This Court's review of subsections XII.B.3 through XII.B.6 demonstrates that Appellant sufficiently alleged each required element with specific factual support, not mere conclusory allegations. Under the Rule 91a standard, which requires accepting all well-pleaded allegations as true, the trial court's dismissal constitutes reversible error.

***Appellant Properly Pleaded All Six Elements of a Stigma-Plus Claim***

As established in the preceding subsections, Appellant's pleadings and supporting affidavit demonstrate:

First, a false statement of stigmatizing nature (XII.B.3): The rumor that Wagner was terminated for coming to work drunk—a particularly damaging allegation for a Campus Safety Officer—was unequivocally false. Wagner swore under oath that "[t]his was not true." (CR181). The intoxication accusation strikes at the heart of a law enforcement professional's fitness for duty and trustworthiness.

Second, public disclosure (XII.B.4): The false statement was "made public" as required for constitutional protection. Wagner's affidavit states he "was told the rumor around the campus was that [he] had been terminated because [he] came to work drunk." (CR180). The phrase "around the campus" establishes widespread dissemination throughout the university community.

Third, connection to government employment action (XII.B.5): The false stigma was directly connected to Wagner's August 14, 2019 termination. The rumor emerged just two days after his discharge, specifically addressing the reason for his termination, and circulated in the same campus community where he had worked for 21 months.

Fourth, absence of any meaningful opportunity to clear his name (XII.B.6): Despite filing a grievance on August 21, 2019, requesting preservation of

exculpatory video evidence (CR181), Wagner received no hearing—neither before the stigma attached nor after it spread throughout campus.

1These allegations, supported by sworn testimony and accepted as true under Rule 91a, establish a viable constitutional claim that should have survived dismissal.

## 8. <u>Three Independent Reasons the Trial Court's Dismissal Was Erroneous</u>
*First: Wagner Stated a Properly-Pleaded Constitutional Claim*

The trial court failed to apply the proper Rule 91a standard, which mandates accepting all well-pleaded allegations as true. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021). Wagner's petition contains specific factual allegations—not legal conclusions—regarding each element of his stigma-plus claim. His sworn affidavit provides evidentiary support that the drunk-at-work rumor was false (CR180), that it circulated "around the campus" (CR180), and that he sought but was denied an opportunity to clear his name through his August 21, 2019 grievance (CR54, CR180).

The trial court cannot weigh evidence or make credibility determinations on a Rule 91a motion. *In re Farmers Tex. County Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021). Whether the rumor actually spread, whether Wagner was responsible for any alleged policy violation, or whether LUPD initiated the stigmatizing statement are all factual disputes that must be resolved at trial, not on a motion to dismiss.

### Second: Wagner's Law Enforcement Career and Reputation Create a Heightened Liberty Interest

Wagner's 21-month tenure as a Campus Safety Officer distinguishes his situation from that of a probationary or temporary employee. The false intoxication stigma particularly damages someone in law enforcement, where sobriety, judgment, and trustworthiness are essential job requirements. As the Texas Supreme Court recognized in *Than*, 901 S.W.2d at 930, when government action threatens both reputation and career prospects in one's chosen profession, the liberty interest deserves constitutional protection.

The parallel to *Than* is compelling: just as the medical student faced career-ending stigma from academic dishonesty charges, Wagner faces similar professional destruction from false intoxication allegations. The Court in *Than* ordered a new hearing despite the university's arguments that relief was unavailable. Similarly, in *Mosley*, 593 S.W.3d at 262, the Court protected a caregiver's liberty interest when placement on a misconduct registry threatened both reputation and career. Wagner's situation—a law enforcement officer falsely labeled as coming to work drunk—presents an equally strong case for constitutional protection.

### Third: The Liberty Interest Provides an Independent Ground for Reversal

This Court need not decide whether Wagner possessed a protected property interest in his employment (Section XII.A) to reverse the trial court's dismissal.

The liberty interest claim stands as an independent basis for relief under Article I, Section 19 of the Texas Constitution. Both property and liberty interests receive protection under the due course of law provision, and prevailing on either ground entitles Wagner to relief.

This alternative theory strengthens Wagner's appeal by providing multiple paths to reversal. Even if this Court were to reject the property interest argument, the properly-pleaded stigma-plus claim alone warrants reversal and remand.

### 9. Texas Supreme Court Precedent Compels Reversal

The Texas Supreme Court's binding precedent in *Than* and *Mosley* mandates reversal here. In *Than*, the Court held that a graduate student accused of academic dishonesty had a protected liberty interest requiring due process before the stigmatizing charges could attach. 901 S.W.2d at 930. The Court explicitly rejected arguments that no remedy was available, ordering the university to provide a new hearing. *Id.* at 933-934.

*Mosley* reaffirmed these principles, recognizing that placement on an employment misconduct registry triggered liberty interest protection because it "threatens not only [the plaintiff's] right to engage in employment as a caregiver by effectively ending her career, but also damages her 'good name, reputation, [and] honor.'" 593 S.W.3d at 262. The Court ordered appropriate procedural protections despite the government's opposition.

58

Wagner's allegations fit squarely within this framework. A Campus Safety

Officer falsely accused of workplace intoxication faces the same type of career-

ending stigma that triggered constitutional protection in *Than* and *Mosley*. This

Court must follow Texas Supreme Court precedent and cannot affirm dismissal of

a claim that meets all requirements established by binding authority.

**10.The Trial Court Failed to Apply the Proper Pleading Standard**
Under Rule 91a, courts "may not consider evidence" and must accept well-

pleaded allegations as true. TEX. R. CIV. P. 91a.6. The trial court's dismissal

suggests it either weighed evidence, made factual determinations, or failed to

accept Wagner's allegations as true—all reversible errors under Rule 91a.

Wagner alleged he filed a grievance seeking to clear his name (CR181, CR186),

satisfying the name-clearing request requirement. While Appellees may dispute

whether this constituted an adequate request or whether Wagner was actually

denied a hearing, such factual disputes cannot be resolved on a Rule 91a motion.

The allegation itself, taken as true, states a viable claim.

**C. Issue Three: The Trial Court Erred in Dismissing Appellant's First Amendment Retaliation Claim Under 42 U.S.C. § 1983**

The trial court erroneously dismissed Appellant's First Amendment

retaliation claim against Appellee Flores in his individual capacity on statute of

limitations grounds. Appellant's Third Amended Petition properly stated a viable

claim for First Amendment retaliation that relates back to his original petition, satisfies all required elements, and is not barred by sovereign immunity.

1. **<u>The First Amendment Retaliation Claim is Timely Under the Relation Back Doctrine</u>**

While Appellee argues the Section 1983 claim is time-barred, this argument fails because the claim relates back to Appellant's original petition filed on August 8, 2023. Section 1983 claims in Texas are governed by a two-year statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). But, Plaintiff's equitable claims based on due process are four year limitations claims. *Ho v. University of Texas at Arlington*, 984 S.W.2d 672(Tex.App.-- Amarillo 1998, pet.denied). Although Appellant's Third Amended Petition adding Flores and the Section 1983 claim was filed on May 30, 2024—nearly five years after his August 14, 2019 termination—the claim is nonetheless timely under the relation back doctrine.

Texas Civil Practice and Remedies Code § 16.068 provides that an amended pleading relates back to the original filing date when it "arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." TEX. CIV. PRAC. & REM. CODE § 16.068(a). The relation back doctrine applies where the basic claim arose out of the conduct, transaction, or occurrence set forth in the original pleading. *Leonard v. Texasco, Inc.*, 422 S.W.2d 160 (Tex. 1967).

First, both the original petition and the Third Amended Petition arise from the same transaction—Appellant's retaliatory termination on August 14, 2019, for supporting Pompa's EEOC complaint. The original petition filed August 8, 2023, specifically alleged that Appellant "was terminated in retaliation for helping Kandy Pompa stand up against the false accusations made against her as well as giving statements in support of the fact that she [was] terminated for discriminatory reasons." (CR7).

Second, Appellee Flores had fair notice of the retaliatory termination claim from the original petition, which described the same core facts: that Wagner was observed helping Pompa with her EEOC statement at 2:00 AM on August 14, 2019, and was terminated less than twelve hours later after being questioned about "what [he] was doing with [Pompa]" during the termination meeting. (CR180-181). The original petition gave explicit notice that Appellant's termination was retaliatory and violated his constitutional rights.

Third, Appellee Flores suffers no prejudice from the relation back of the Section 1983 claim. The evidence required to defend against the federal constitutional claim is identical to that required for the state constitutional claims already pleaded. Both claims arise from the same August 14, 2019 termination, involve the same witnesses, and require the same documentary evidence. Moreover, as Chief of Police at the time of the termination, Flores had actual

61

knowledge of the underlying events and has been on notice of potential liability since the original petition was filed within the four-year limitations period for Texas constitutional claims.

Appellee's argument that Section 16.068 does not apply when adding a new party misses the mark. (CR216-217). While Flores was added as an individual defendant in the Third Amended Petition, he was already effectively a party to the litigation through his official capacity as Chief of the Lamar University Police Department, which was sued in the original petition. The addition of Flores in his individual capacity for the same underlying conduct does not defeat relation back. *See Chavez v. Andersen*, 525 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

**2. <u>Wagner Properly Pleaded All Elements of First Amendment Retaliation</u>**
Appellant's Third Amended Petition adequately alleges each element required for a First Amendment retaliation claim under Section 1983. To establish such a claim, a plaintiff must show: (1) he engaged in constitutionally protected speech; (2) the defendant's actions adversely affected the protected speech; and (3) a causal relationship exists between the retaliatory action and the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

***Protected Speech***

Appellant engaged in protected speech when he provided a statement supporting Pompa's EEOC discrimination complaint against Chief Flores. (CR174-175, ¶19). The Supreme Court's analysis in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), requires determining whether the employee spoke as a citizen on a matter of public concern. Both requirements are satisfied here.

First, Wagner spoke as a citizen, not pursuant to his official duties. The record establishes that Wagner was off-duty when he met with Pompa and Hebert at Gentry Hall to finalize their EEOC statements. (CR179). As stated in his Third Amended Petition, Wagner "was not on duty at the time of the protected organization and speech which is protected under the first amendment." (CR175, ¶22). Providing support for a colleague's EEOC complaint was not part of Wagner's job responsibilities as a Campus Safety Officer, which involved "responding to calls for service, handling medical calls, managing lost items belonging to the university, locking buildings, and patrolling the campus." (CR179). *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (per curiam) (speech made pursuant to official duties is not protected).

Second, Wagner's speech involved matters of public concern. His statement addressed "police misconduct, sexual harassment, and race-based discrimination" within the Lamar University Police Department. (CR175-176, ¶22). As the Fifth

Circuit has recognized, speech relating to racial discrimination almost always involves matters of public concern. *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008). The public has a substantial interest in the proper functioning of law enforcement agencies and the elimination of discrimination within government institutions. *See Connick v. Myers*, 461 U.S. 138, 145-46 (1983) (speech involves matter of public concern when it relates to "any matter of political, social, or other concern to the community").

### Adverse Employment Action

The second element is undisputed—termination constitutes the paradigmatic adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Wagner was terminated on August 14, 2019, after approximately twenty-one months of employment. (CR171, CR179).

### Causal Connection

The temporal proximity and direct evidence establish the requisite causal connection between Wagner's protected speech and his termination. Wagner was observed assisting Pompa with her EEOC statement at 2:00 AM on August 14, 2019. (CR179-180). Less than twelve hours later, at noon that same day, Wagner was called in and terminated. (CR180).

More compelling than the temporal proximity is the direct evidence of retaliatory motive. During the termination meeting, Chief Flores "asked repeatedly about Kandy Pompa, what [Wagner] was doing with her, and what she was doing

64

at the campus." (CR180). Wagner explained that he was providing a statement for Pompa's EEOC complaint, information that Flores already knew. (CR180). The focus on Wagner's protected activity during the termination meeting demonstrates that the speech was at least a substantial or motivating factor in the termination decision. *Mt. Healthy*, 429 U.S. at 287.

As the Supreme Court observed in *Nieves v. Bartlett*, retaliatory animus is "easy to allege and hard to disprove." *Nieves v. Bartlett*, 139 S. Ct. at 1725. Here, however, the evidence strongly supports retaliatory animus: Wagner was terminated the very day he was observed helping Pompa with discrimination claims against Flores, and the termination meeting focused on that protected activity rather than any legitimate performance issues. These allegations, taken as true at the pleading stage, establish a viable First Amendment retaliation claim.

3. **Sovereign Immunity Does Not Bar Individual Capacity Claims Under Section 1983**

The trial court erred in dismissing Appellant's Section 1983 claim based on sovereign immunity. State officials sued in their individual capacities for constitutional violations are not protected by sovereign immunity. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991). The Supreme Court has explicitly held that "state officials sued in their individual capacities are 'persons' within the meaning of § 1983" and that "the Eleventh Amendment does not erect a barrier against suits to

impose individual and personal liability on state officials under § 1983." *Id.* at 30-31.

Appellant's Third Amended Petition clearly alleges that "Hector Flores acted both in his official capacity and in his individual capacity with respect to the violation of Plaintiff's First Amendment Rights." (CR176, ¶23). The petition seeks to hold Flores personally liable for his retaliatory actions taken under color of state law. This is precisely the type of individual capacity suit that Section 1983 authorizes. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Appellee's argument that Flores cannot provide equitable relief in his individual capacity misses the point. (CR219). While Appellant's petition states he seeks "only equitable relief under the Texas Constitution" (CR175, ¶24), the Section 1983 claim against Flores individually may properly seek damages or other appropriate relief available under federal law. Moreover, even if limited to equitable relief, prospective injunctive relief remains available against state officials sued in their individual capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989).

To the extent Appellee raises qualified immunity as a defense, such immunity is an affirmative defense that cannot be the basis for dismissal under Rule 91a or a plea to the jurisdiction. Qualified immunity requires a fact-intensive inquiry into whether the official violated clearly established constitutional rights—

an analysis inappropriate at the pleading stage. *Turner v. Perry*, 278 S.W.3d 806, 812 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The trial court erred in dismissing the claim before Appellant had the opportunity to develop the factual record necessary to overcome any qualified immunity defense.

## XIII. <u>CONCLUSION & PRAYER</u>

For the foregoing reasons, the trial court erred in dismissing Appellant's due course of law, liberty interest, and First Amendment retaliation claims. Appellant properly alleged facts establishing three independent grounds for relief, each of which alone requires reversal of the trial court's dismissal order.

First, Appellant adequately alleged a protected property interest in his continued employment based upon LUPD's policies and procedures that indicated termination could only occur for "just cause." (CR174). When reviewed under the appropriate de novo standard with all well-pleaded allegations accepted as true, Appellant established that he possessed a legitimate expectation of continued employment absent just cause. The trial court improperly weighed evidence rather than accepting these pleaded facts, and erroneously concluded that Wagner lacked a property interest sufficient to invoke constitutional protection. Wagner was denied fundamental procedural protections—no warning, no fair investigation, no consideration of his employment record—in direct violation of the due course of

67

law guaranteed by Article I, Section 19 of the Texas Constitution. As the Texas Supreme Court made clear in *City of Odessa v. Barton*, 967 S.W.2d 834, 835 (Tex. 1998), and *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 933 (Tex. 1995), the remedy for such violations is to provide the process that was denied.

Second, Appellant properly pled a viable "stigma-plus" liberty interest claim by alleging that false and stigmatizing statements—specifically, that he came to work drunk—were made public on campus in connection with his termination. (CR55, CR181). All six elements required for such a claim were sufficiently alleged: (1) Wagner was a public employee; (2) he was discharged; (3) stigmatizing charges were made in connection with his discharge; (4) the charges were false; (5) the charges were made public on campus; and (6) he was denied a meaningful opportunity to clear his name. The Texas Supreme Court has recognized in both *Than* and *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 255-56 (Tex. 2019), that such liberty interests are protected by the Texas Constitution's due course of law provision, and that disciplinary dismissals accompanied by false public statements require procedural safeguards.

Third, Appellant adequately pled a First Amendment retaliation claim under 42 U.S.C. § 1983 against Chief Flores in his individual capacity. Wagner alleged he was terminated the day after being seen helping colleague Kandy Pompa prepare her EEOC discrimination complaint—protected speech on a matter of public

68

concern involving police misconduct and discrimination. (CR174-175, CR180). The temporal proximity between Wagner's protected activity and his termination, combined with the pretextual nature of the stated reason for discharge, establishes the causal connection required for a retaliation claim. This federal claim properly relates back to the original petition under Texas Civil Practice and Remedies Code § 16.068, avoiding any statute of limitations bar.

The trial court's dismissal with prejudice was reversible error on multiple grounds. Under Rule 91a's standard, the court was required to accept all pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. Instead, the trial court improperly weighed evidence, failed to recognize the constitutional protections at stake, and denied Wagner any opportunity to obtain the procedural safeguards to which he is entitled. As the Texas Supreme Court emphasized in *Than*, "the remedy for a denial of due process is due process." 901 S.W.2d at 933. The trial court's dismissal with prejudice eliminates any possibility of providing such remedy, rendering the constitutional guarantees meaningless.

Wagner need prevail on only one of these three independent grounds to obtain reversal. Each claim was properly pled, supported by specific factual allegations, and grounded in well-established Texas and federal law. When properly reviewed de novo with all allegations accepted as true, Wagner's claims are legally sufficient and must proceed.

69

WHEREFORE, PREMISES CONSIDERED, Appellant Charles Wagner respectfully prays that this Honorable Court:

1. REVERSE the trial court's Order of November 14, 2024, dismissing Appellant's claims with prejudice;

2. REMAND this case to the trial court for further proceedings on the merits;

3. AWARD Appellant all costs of this appeal;

4. GRANT such other and further relief, both at law and in equity, to which Appellant may show himself justly entitled.

## XIV.  <u>ATTORNEYS FOR APPELLANT</u>

*/s/ Brandon P. Monk*
Brandon P. Monk
Monk Law Firm
4875 Parker Drive
Beaumont, TX 77705
brandon@themonklawfirm.com
(409) 724-6665
(409) 729-6665 -fax


Larry Watts
State Bar No. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Ph. (281) 431-1500,
Fax (877) 797-4055
Wattstrial@gmail.com

## XV. CERTIFICATE OF SERVICE

I certify that on November 10, 2025, the foregoing document was forwarded via the electronic filing system to the following parties/counsel:

Joseph Keeney
State Bar No. 24092616
Assistant Attorney General Office of the Attorney General
General Litigation Division
P.O. Box 12548,
Capitol Station Austin, Texas 78711-2548
T: (512) 475-4090
F: (512) 320-0667 Joseph.Keeney@oag.texas.gov

*/s/ Brandon P. Monk*
Brandon P. Monk

## XVI. CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, this brief contains 14,615 words (excluding the items exempted under Texas Rule of Appellate Procedure 9.4(i)(1)).

*/s/ Brandon P. Monk*
Brandon P. Monk

No. 15-25-00147-CV

# IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

**CHARLES WAGNER,**
- **APPELLANT**

**V.**

**LAMAR UNIVERISTY AND LAMAR UNIVERSITY POLICE DEPARTMENT,**
– **APPELLEES**

**ON APPEAL FROM THE 136th JUDICIAL DISTRICT COURT**
**JEFFERSON COUNTY, TEXAS**
**CAUSE NO. 23DCCV0870**
**HON. JUDGE BAYLOR WORTHAM, PRESIDING**

# APPENDIX

**SUBMITTED BY:**

Brandon P. Monk
4875 Parker Drive
Beaumont, Texas 77705
Phone:   (409) 724-6665
Fax:       (409) 729-6665
brandon@themonklawfirm.com

Larry Watts
P.O. Box 2214
Missouri City, Texas 77459
Ph. (281) 431-1500,
Fax (877) 797-4055
Wattstrial@gmail.com

# TABLE OF CONTENTS

| Excerpt Tab Number | Record Citation | Document | Appendix Page |
|---|---|---|---|
| TAB 1 | CR 169-170 CR 223-224 | Orders of Dismissal | App'x - 4 |
| TAB 2 | | TEX. CONST. art. I, § 19 | App'x - 9 |
| TAB 3 | | 42 U.S.C. § 1983 | App'x - 11 |
| TAB 4 | | Tex. R. Civ. P. 91a | App'x - 13 |

i

# TAB 1

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
5/16/2024 9:34 AM
JAMIE SMITH
DISTRICT CLERK
23DCCV0870

CAUSE NO. 23DCCV0870

| | | |
|---|---|---|
| CHARLES WAGNER, | § | IN THE DISTRICT COURT OF |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| LAMAR UNIVERSITY, AND | § | |
| LAMAR UNIVERSITY | § | |
| POLICE DEPARTMENT | § | |
| DEFENDANTS. | § | 136TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S FIRST AMENDED PLEA TO THE JURISDICTION

Before the Court is Defendant's First Amended Plea to the Jurisdiction. After careful consideration of Defendant's Plea and any responses by Plaintiff, as well as the argument of counsel, the Court is of the opinion that Defendant's Plea is meritorious.

THEREFORE, it is **ORDERED** that Defendant's Plea is hereby **GRANTED**, and Plaintiff's claims against Defendant are hereby **DISMISSED WITH PREJUDICE**.

SIGNED this 15th day of May, 2024.

_____
PRESIDING DISTRICT JUDGE

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 87804624
Filing Code Description: Notice
Filing Description: SIGNED ORDER GRANTING PLEA TO THE JURISDICTION
Status as of 5/16/2024 9:48 AM CST

Associated Case Party: Charles  Wagner

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Larry Watts | | wattstrial@gmail.com | 5/16/2024 9:34:15 AM | SENT |
| Brandon Monk | | brandon@themonklawfirm.com | 5/16/2024 9:34:15 AM | SENT |

Associated Case Party: Lamar University

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Keeney | | joseph.keeney@oag.texas.gov | 5/16/2024 9:34:15 AM | SENT |
| Raymond Abarca | | Raymond.Abarca@oag.texas.gov | 5/16/2024 9:34:15 AM | SENT |

**FILED**
**DISTRICT CLERK OF**
**JEFFERSON CO TEXAS**
**11/14/2024 10:32 AM**
**JAMIE SMITH**
**DISTRICT CLERK**
**23DCCV0870**

CAUSE NO. 23DCCV0870

| | | |
|---|---|---|
| CHARLES WAGNER, *Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | |
| LAMAR UNIVERSITY, et al. *Defendants.* | §<br>§<br>§<br>§<br>§ | JEFFERSON COUNTY, TEXAS<br><br>136TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S PLEA TO THE JURISDICTION AND 91A MOTION TO DISMISS

Before the Court is Defendant Hector Flores' Plea to the Jurisdiction and Rule 91a Motion to Dismiss. After careful consideration of Defendant's Plea and Motion, and any responses by Plaintiff, as well as the argument of counsel, the Court is of the opinion that Defendant's arguments are meritorious.

THEREFORE, it is **ORDERED** that Defendant's Plea to the Jurisdiction and Rule 91a Motion to Dismiss is hereby **GRANTED**, and Plaintiff's suit is hereby **DISMISSED WITH PREJUDICE**.

SIGNED this 14th day of November, 2024.

_____
PRESIDING DISTRICT JUDGE

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 94285313
Filing Code Description: Notice
Filing Description: Signed Order- Granting Defendant's Plea to the Jurisdiction and 91A Motion to Dismiss
Status as of 11/14/2024 10:46 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Keeney | 24092616 | joseph.keeney@oag.texas.gov | 11/14/2024 10:32:32 AM | SENT |
| Caroline Taylor | | caroline.taylor@oag.texas.gov | 11/14/2024 10:32:32 AM | SENT |
| Larry Watts | | wattstrial@gmail.com | 11/14/2024 10:32:32 AM | SENT |
| Brandon Monk | | brandon@themonklawfirm.com | 11/14/2024 10:32:32 AM | SENT |

# TAB 2

\*\*\* This document is current through the 2023 Regular Session; the 1st C.S.; the 2nd C.S.; the 3rd C.S. and the 4th C.S. of the 88th Legislature; and the November 7, 2023 general election results. \*\*\*

***Texas Constitution Annotated by LexisNexis® > Constitution of the State of Texas 1876 > Article I Bill of Rights***

## Sec. 19. Deprivation of Life, Liberty, Property, etc. by Due Course of Law.

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Annotations

**Notes to Decisions**

**Administrative Law: Agency Adjudication: Decisions: Contents**

**Administrative Law: Agency Adjudication: Hearings: General Overview**

**Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process**

**Administrative Law: Agency Adjudication: Impartiality: General Overview**

**Administrative Law: Agency Adjudication: Prehearing Activity**

**Administrative Law: Governmental Information: Freedom of Information: Defenses & Exemptions: Statutory Exemptions**

**Administrative Law: Judicial Review: Administrative Record: General Overview**

**Administrative Law: Judicial Review: Standards of Review: Arbitrary & Capricious Review**

**Administrative Law: Separation of Powers: Primary Jurisdiction**

**Business & Corporate Law: Agency Relationships: Agents Distinguished: Independent Contractors, Masters & Servants: General Overview**

**Business & Corporate Law: Agency Relationships: Establishment: Elements: General Overview**

**Business & Corporate Law: Corporations: Finance: Franchise Tax: Penalties for Noncompliance**

**Business & Corporate Law: Corporations: Shareholders: Actions Against Corporations: Derivative Actions: Enforcement of Corporate Rights**

**Business & Corporate Law: Corporations: Shareholders: Disregard of Corporate Entity: General Overview**

**Civil Procedure: Justiciability: Standing: General Overview**

**Civil Procedure: Justiciability: Standing: Burdens of Proof**

# TAB 3

***United States Code Service*** **>** ***TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 164)*** **>** ***CHAPTER 21. CIVIL RIGHTS (§§ 1981 — 2000h-6)*** **>** ***GENERALLY (§§ 1981 — 1996b)***

## § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## History

**HISTORY:**

R. S. § 1979; Dec. 29, 1979, *[P. L. 96-170](#)*, § 1, *[93 Stat. 1284](#)*; Oct. 19, 1996, *P. L. 104-317*, Title III, § 309(c), *110 Stat. 3853*.

Annotations

## Notes

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

**Explanatory notes:**

**Amendment Notes**

**1979.**

**1996.**

**Other provisions:**

**Explanatory notes:**

This section formerly appeared as  8 USC § 43.

R.S. § 1979 was derived from Act April 20, 1871, ch 22, § 1,  *[17 Stat. 13](#)*.

# TAB 4

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a. Dismissal of Baseless Causes of Action

Annotations

## Notes

**Editor's Notes.**

*Tex. R. Civ. P. 91a* has been set out as subrules 91a.1 through 91a.9.

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

## Notes to Decisions

**Administrative Law: Sovereign Immunity**

**Antitrust & Trade Law: Consumer Protection: Deceptive Acts & Practices: State Regulation**

**Civil Procedure: Jurisdiction: Subject Matter Jurisdiction**

The State and Federal rules are current through April 23, 2025. Local District rules are updated periodically throughout the year.

***TX - Texas Local, State & Federal Court Rules > TEXAS RULES OF CIVIL PROCEDURE > PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS > SECTION 4. Pleading > C. PLEADINGS OF DEFENDANT > Rule 91a. Dismissal of Baseless Causes of Action***

## Rule 91a.1. Motion and Grounds.

Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

Brandon Monk

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

***TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action***

## Rule 91a.2. Contents of Motion.

A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

*Tex. R. Civ. P. 91a.3*

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.3. Time for Motion and Ruling.

A motion to dismiss must be:

**(a)** filed within 60 days after the first pleading containing the challenged cause of action is served on the movant;

**(b)** filed at least 21 days before the motion is heard; and

**(c)** granted or denied within 45 days after the motion is filed.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both

## *Tex. R. Civ. P. 91a.4*

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.4. Time for Response.

Any response to the motion must be filed no later than 7 days before the date of the hearing.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

## Notes to Decisions

# *Tex. R. Civ. P. 91a.5*

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.5. Effect of Nonsuit or Amendment; Withdrawal of Motion.

**(a)**  The court may not rule on a motion to dismiss if, at least 3 days before the date of the hearing, the respondent files a nonsuit of the challenged cause of action, or the movant files a withdrawal of the motion.

**(b)**  If the respondent amends the challenged cause of action at least 3 days before the date of the hearing, the movant may, before the date of the hearing, file a withdrawal of the motion or an amended motion directed to the amended cause of action.

**(c)**  Except by agreement of the parties, the court must rule on a motion unless it has been withdrawn or the cause of action has been non suited in accordance with (a) or (b). In ruling on the motion, the court must not consider a nonsuit or amendment not filed as permitted by paragraphs (a) or (b).

**(d)**  An amended motion filed in accordance with (b) restarts the time periods in this rule.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.6. Hearing; No Evidence Considered.

Each party is entitled to at least 14 days' notice of the hearing on the motion to dismiss. The court may, but is not required to, conduct an oral hearing on the motion. Except as required by 91a.7, the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.7. Award of Costs and Attorney Fees.

Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. Any award of costs or fees must be based on evidence.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

The State and Federal rules are current through April 23, 2025.  Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.8. Effect on Venue and Personal Jurisdiction.

This rule is not an exception to the pleading requirements of Rules 86 and 120a, but a party does not, by filing a motion to dismiss pursuant to this rule or obtaining a ruling on it, waive a special appearance or a motion to transfer venue. By filing a motion to dismiss, a party submits to the Court's jurisdiction only in proceedings on the motion and is bound by the court's ruling, including an award of attorney fees and costs against the party.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 9la.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

The State and Federal rules are current through April 23, 2025. Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 4. Pleading  >  C. PLEADINGS OF DEFENDANT  >  Rule 91a. Dismissal of Baseless Causes of Action*

## Rule 91a.9. Dismissal Procedure Cumulative.

This rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal.

## History

Added by Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013; Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019.

Annotations

## Notes

**Editor's Notes.**

Texas Supreme Court Misc. Docket No. 13-9022 provides: " *Rule of Civil Procedure 91a* and  *Rule of Evidence 902(10)(c)* apply to all cases, including those pending on March 1, 2013."

For archived documents prior to 2020, please see  *Tex. R. Civ. P. 91a*.

## Commentary

**General Comments**

**Comment to 2013 change by G.O. 13-9022**Rule 91a is a new rule implementing *section 22.004(g) of the Texas Government Code*, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. A motion to dismiss filed under this rule must be ruled on by the court within 45 days unless the motion, pleading, or cause of action is withdrawn, amended, or non suited as specified in 91a.5. If an amended motion is filed in response to an amended cause of action in accordance with 91a.5(b), the court must rule on the motion within 45 days of the filing of the amended motion and the respondent must be given an opportunity to respond to the amended motion. The term "hearing" in the rule includes both submission and an oral hearing. Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss.

## Notes to Decisions

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ednesha Cook on behalf of Brandon Monk
Bar No. 24048668
ecook@themonklawfirm.com
Envelope ID: 107868759
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025.11.10 Appellant's Brief with Appendix
Status as of 11/10/2025 2:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Harris | 24057887 | Drew.Harris@oag.texas.gov | 11/10/2025 2:10:28 PM | SENT |
| Joseph Keeney | 24092616 | joseph.keeney@oag.texas.gov | 11/10/2025 2:10:28 PM | SENT |
| Larry Watts | | wattstrial@gmail.com | 11/10/2025 2:10:28 PM | SENT |
| Brandon P.Monk | | brandon@themonklawfirm.com | 11/10/2025 2:10:28 PM | SENT |
| Jennifer Holt | | jennifer.holt@oag.texas.gov | 11/10/2025 2:10:28 PM | SENT |
| Heather Johnson | | heather@themonklawfirm.com | 11/10/2025 2:10:28 PM | SENT |